**In the Matter of John Lester GRISWOLD, Bankrupt.**

**Adam W. PABST, Trustee in Bankruptcy, Plaintiff-Appellee,**

v.

**HARRIS TRUCK & TRAILER SALES, INC., Defendant-Appellant.**

**No. 76–1786.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1977.

Decided June 20, 1977.

**452**

John W. Leskera, East St. Louis, Ill., Walter S. Drusch, Jr., Cape Girardeau, Mo., for defendant-appellant.

Harold G. Baker, Jr., Belleville, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, CASTLE, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

PER CURIAM.

John Lester Griswold was adjudicated a voluntary bankrupt on July 21, 1972. On four occasions between October 1969 and September 1971, he purchased eleven tractors, some with trailers, from defendant Harris Truck & Trailer Sales, Inc. These purchases were made under four discrete and separately perfected security agreements and had not been fully paid for at the time of Griswold's adjudication. None of the four security agreements was ever consolidated.

Two of the eleven motor vehicles were seized by other creditors of Griswold and are not involved herein. A third was delivered to defendant for repairs seven months before the bankruptcy. This vehicle apparently remained in defendant's possession until its sale on October 5, 1972. The other eight units in question were repossessed by defendant because of Griswold's default between July 8 and 24, 1972, and were sold between July 16, 1972, and August 10, 1973. All sales but one[1] occurred after Griswold was adjudicated bankrupt and without notice to or the permission of the bankruptcy judge.

Under two of the security agreements, defendant sold the units for gains of $2,489.95 and $3,955.13 respectively over what was owed under the agreements. Under the remaining two security agreements, defendant sold the units for losses of $2,552.82 and $9,120.84. In February 1973, defendant filed its claim in the bankruptcy proceeding for $8,898.87.[2]

Adam W. Pabst, who had been appointed Trustee in Bankruptcy on August 22, 1972, filed an amended petition on May 13, 1974, for an order directing defendant to make an accounting of the proceeds of the sales of the repossessed equipment and to show

---

1. One sale was on July 16, 1972, with a net loss of $2,522.82.

2. This sum was computed before the last two vehicles were sold by defendant. As shown *infra*, it now claims $5,228.58.

cause why he should not be paid the sales proceeds. In its answer to the petition, defendant asserted that it had an unsecured claim against the bankrupt calculated as follows:

| July 16, 1972, sale with loss under security agreement dated 10/24/69 | | $ 2,552.82 |
|---|---|---|
| August 10, 1973, sale with loss under security agreement dated 9/27/71 | | 9,120.84 |
| Total of Losses | | $11,673.66 |
| | | |
| Less: | | |
| November 21, 1972, sale with gain under security agreement 10/30/69 | $2,489.95 | |
| August-October 1972, sales with gain under security agreement dated 8/10/71 | $3,955.13 | |
| Total of Gains | | 6,445.08 |
| NET LOSS | | $ 5,228.58 |

Defendant contended that it was entitled to set off the $6,445.08 gains against the $11,673.66 losses as a result of the sale of the vehicles even though the gains and losses occurred under separate security agreements and at different times. It sought to stand as a general creditor against the estate for the $5,228.58 amount. In support of its contention, defendant relied upon Section 68 of the Bankruptcy Act, which provides as follows:

"a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

"b. A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate and allowable under subdivision g of section 93 of this title [Section 57 of the Bankruptcy Act]; or (2) was purchased by or transferred to him after the filing of the petition or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy." (11 U.S.C. § 108)

In September 1974, bankruptcy judge James D. Trabue entered an order directing defendant to pay the $6,435.08 gains [3] to the Trustee in Bankruptcy and denied defendant the right to offset against those gains its $11,673.66 losses. The bankruptcy court noted defendant's theory would "permi[t] it to receive preferential treatment by extending the scope of its liens" since "the trustee would have been entitled to sell those vehicles in which he had an equity and to pay the respondent the amount of its lien" (App. 20–21). Defendant was allowed to stand as a general creditor to the extent of those losses. Defendant filed a petition for review with the district court, but the bankruptcy judge's order was sustained in February 1976. Thereupon this matter was appealed to us. We affirm.

■ The question before us is whether defendant, a secured creditor of the bankrupt, may offset the gains it received on the sales of seven repossessed motor vehicles under two separate security agreements against the losses it incurred on the sales of two repossessed vehicles under two other security agreements. The Trustee in Bankruptcy claims that each security agreement and the sales thereunder stand alone, so that defendant is not entitled to use the gains of $6,445.08 under two of the security agreements to offset its losses of $11,673.66 under the other two agreements. The bankruptcy judge held that under Section 68, "set off is allowed only in those cases in which a preference under Section 60 [11 U.S.C. § 96] did not exist" (App. 20). We agree.

*Ad limine* it should be noted that defendant did not hold any of the four security agreements continuously from their respective dates to the date of adjudication. Two of the security agreements were sold to Commercial Credit Corporation and each was repurchased by defendant after the bankruptcy adjudication. The remaining security agreements were sold to Harris

---

3. Through a mathematical error, the order listed these gains as $6,435.08 instead of $6,445.08.

Financial Services, Inc. and then repurchased by defendant, the various repurchases again occurring after adjudication. As the bankruptcy judge explained, defendant "was required to honor its recourse agreements [by repurchasing them] because of the default of the bankrupt on the contracts * * *" (App. 21).

■ Section 68(b)(1) plainly bars this setoff. It provides that a setoff shall not be allowed in favor of any debtor of the bankrupt which is not allowable under Section 57(g) of the Bankruptcy Act. That subsection bars the claims of creditors who have received or acquired preferences.[4] Thus if defendant received a preference, it may not set off preferential profits against losses sustained in the sale of the repossessed tractors. 4 Collier on Bankruptcy ¶ 68.08 (14th ed. 1975).

Here the defendant received preferences as defined in Section 60(a)(1) (11 U.S.C. § 96(a)(1))[5] when it repossessed and sold seven tractors for an amount in excess of its liens thereon. As the district court succinctly explained:

> "A preference under § 60 exists if a debtor suffers a transfer of his property to a creditor while the debtor is insolvent, and within four months before bankruptcy, on account of an antecedent debt. These conditions are present. As a final requirement, however, the effect of the transfer must be to enable the creditor to obtain a greater percentage of his debt than some other creditor of the same class or no preference exists. As the Bankruptcy Judge points out, unquestionably, each retail installment contract was

a separate and distinct transaction. If on a transfer of property in satisfaction of a lien, the value of the property surrendered is 'in substantial excess of the value of the creditor's lien, or if the transaction places the creditor in a materially better position with reference to the enforcement of his claims,' a preference is effected [sic]." (App. 23.)

See also *K. King & G. Shuler Corp. v. Petitioning Creditors*, 427 F.2d 689 (9th Cir. 1970).

Defendant relies on *In re Forney*, 299 F.2d 503 (7th Cir. 1962), as showing that its liens were valid and preexisting. The point is immaterial. Preferences occurred here because defendant received $6,445.08 in excess of those liens. Here, as defined in *Forney*, there was a preference because there was a "diminution of the assets properly available to some other creditor of the same class as the creditors receiving the preference" (229 F.2d at 506); see also 3 Collier on Bankruptcy ¶ 60.22 at 871 (14th ed. 1975).

As to the sales resulting in gains, all the elements of a preference were present because the repossession of the seven units occurred while the debtor was insolvent and within four months of bankruptcy adjudication. Thus defendant was enabled to obtain a greater percentage of his debt than other creditors of the same class.[6] If defendant had not resorted to self-help, the bankruptcy trustee could have sold those seven vehicles and paid defendant only the amount of its lien on them. As the bankruptcy judge realized (App. 20–21), defendant was receiving preferential treatment by

---

4. Section 57(g) of the Bankruptcy Act provides: "The claims of creditors who have received or acquired preferences, liens, conveyances, transfers, assignments or encumbrances, void or voidable under this title, shall not be allowed unless such creditors shall surrender such preferences, liens, conveyances, transfers, assignments, or encumbrances." (11 U.S.C. § 93(g))

5. Section 60(a)(1) of the Bankruptcy Act provides: "A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on

account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

6. The trustee concedes that if gains and losses for sales of trucks covered by a single security agreement were set off, no undue percentage of the secured creditors' debt would obtain. Thus the four distinct agreements are crucial.

extending the scope of its liens to the extent of the gains incurred. The fact that defendant was required to repurchase the four security agreements showed it had reasonable cause to believe that the debtor was insolvent, so that the bankruptcy trustee was entitled to avoid the preference under Section 60(b) of the Bankruptcy Act (11 U.S.C. § 96(b)). Therefore, defendant was not entitled to retain the profits of $6,445.08.[7]

The district court's order of February 3, 1976, is affirmed.

7. Because we invalidate the setoff on the basis of Section 68(b)(1), we need not decide whether it is also invalid under Section 68(b)(2). Nor need we decide whether the attempted set-off resulted from debts and credits which were "mutual" within the meaning of Section 68(a). See generally, Note, Bankruptcy: Mutuality As a Requirement for Set-off, 28 Calif.L.Rev. 606 (1940).